FARMERS' LOAN & TRUST CO. OF NEW YORK v. FOREST PARK & C. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 2, 1895.)

No. 115.

RAILROADS—MECHANICS' LIENS—FORECLOSURE—REDEMPTION BY MORTGAGEE—ESTOPPEL.

The stockholders of a railroad company whose bonded debt of $50,000 equaled its authorized capital (the limit placed on such indebtedness by Gen. R. R. Law Mo., Rev. St. 1879, § 765) passed a resolution that the capital be increased to $1,000,000, and that the bonded indebtedness be increased to $700,000. Though Rev. St. 1879, § 729, provides that, on the stock of a corporation being increased, the date and amount thereof shall be certified to the secretary of state, and section 708 provides that no increase of stock shall be valid till the corporation pays a certain tax into the state treasury, and Const. Mo. art. 10, § 21, declares that no corporation shall increase its stock without first paying such tax, the certificate was not filed or the tax paid till five years after the resolution, and three years after the railroad company had been divested of title to the road under foreclosure of mechanics' liens, and after the purchaser at foreclosure sale had in good faith expended $2,300,000 in extending and improving the road. No claim in the meantime was set up on account of the bonds under the mortgage given to secure them, and recorded before foreclosure of the lien, though all persons interested in the mortgage knew of the work being done on the road. The bonds were not placed for disposal in the hands of the persons designated in the resolution, and the road got the benefit of no proceeds therefrom. *Held* that, all the parties who handled the bonds having notice of all these facts, the mortgagee was estopped to claim, against the purchaser at foreclosure of the lien, the right of a junior mortgagee to redeem, though not made a party to the foreclosure. A court of chancery will not disturb the title to millions of dollars' worth of property acquired in good faith, at the suit of one who sets up a doubtful equity acquired with full notice for a few dollars for speculative purposes.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit by the Farmers' Loan & Trust Company of New York against the Forest Park & Central Railroad Company and others to foreclose a mortgage. Decree for defendants. Complainant appeals.

Frederick N. Judson and Warwick Hough filed brief for appellant.

John C. Orrick (Horton Pope was with him on the brief), for appellees.

Before BREWER, Circuit Justice, and CALDWELL and SANBORN, Circuit Judges.

CALDWELL, Circuit Judge. This suit was begun on the 13th day of October, 1887, by the Farmers' Loan & Trust Company of New York, appellant, against the Forest Park & Central Railroad Company, the St. Louis, Kansas City & Colorado Railroad Company, and others, to foreclose a mortgage executed by the Forest

Park & Central Railroad Company to the appellant. The suit was instituted by the appellant, who was trustee in the mortgage, at the request of J. K. O. Sherwood, the holder of 79 of the bonds mentioned in the mortgage. The following is a brief summary of the facts giving rise to the suit: On October 2, 1877, the Forest Park & Central Railroad Company, hereafter called the "Park Company," was incorporated under the general law for the formation of railroad companies in Missouri, for the purpose of building a railroad from Union avenue, between the north line of Forest park and the Olive Street road, to some point on Academy lane, in Central township, St. Louis county, Mo.; the length of the road to be six miles, and the capital stock $50,000. On the 7th of November, 1881, there was filed in the office of the secretary of state an amendment to this charter, authorizing this company to extend its line from Academy lane, westwardly across the north end of Creve Coeur Lake, to a point on the Missouri river, a distance of about twelve miles, and to extend its line from its then eastern terminus, in an easterly direction, a distance of about four miles, to the tracks of the Union Depot, in St. Louis. On April 27, 1880, the Park Company exhausted its power to mortgage its property by executing a mortgage for $50,000, the full amount of its capital stock, to secure that amount of its first mortgage bonds. On March 31, 1882, the stockholders passed the following resolution on the subject of the increase of the capital stock of the company:

"Resolved (1) that the capital stock of the Forest Park and Central R. R. Company shall be increased to one million dollars; and resolved (2) that the bonded indebtedness of said company shall be increased to seven hundred thousand dollars, but subject to the understanding and condition that said stock and bonds shall, when issued, be placed in the hands of W. Speed Stevens, Booneville, Mo., and L. M. Losson, of New York City, to hold and control for the interest of the parties interested in said road, with power to name the trustees for the bonds, and shall not otherwise be issued. The board of directors and proper officers of the railroad company are authorized to issue said stock and bonds in the manner aforesaid."

No other steps were then taken to make this increase of stock effectual. The date and amount of the increase was not certified to the secretary of state, as required by section 729 of the Revised Statutes of Missouri, and the tax required by section 708 to be paid into the state treasury before any increase in the capital stock of a corporation "shall be valid and effectual" was not paid. The record shows no meeting of the stockholders subsequent to the passage of this resolution. On the 9th day of January, 1883, the Park Company, by John F. Hume, its president, executed a mortgage to the appellant to secure an issue of 700 of its mortgage bonds, for the sum of $1,000 each, "all dated the 1st day of March, 1882." This mortgage not proving satisfactory, another mortgage for like purposes and similarly conditioned was executed and acknowledged on the 18th day of August, 1883, by William W. Walker, as president of the company, and filed for record on the 19th day of September, 1883. On the 23d day of February, 1883, the Park Company entered into a contract with the same William W. Walker for the construction of 23 miles of its road, agreeing to

pay him therefor $700,000 in first mortgage bonds, and $1,000,000 of the full-paid stock of the company. At the date of its execution, Walker assigned this contract to the Missouri & Kansas Railroad Construction Company of Colorado, hereafter called the "Construction Company." The Construction Company sublet the work, or a part of it, to subcontractors. The estimates of the work performed and materials furnished by these subcontractors—and no other work was done by the Construction Company—amounted to something over $30,000. There was paid on these estimates only the sum of $2,245.34. The subcontractors filed mechanics' liens on the property, and in February and April, 1884, judgments were rendered, establishing these liens for sums aggregating $38,277.20, and decreeing the sale of the property to satisfy the same. The Park Company alone was made a defendant in these suits. Under processes issued upon these judgments, the road was duly sold to Dyer & Garland, and afterwards, by mesne conveyances, the title passed in 1884 to the St. Louis, Kansas City & Colorado Railroad Company, hereafter called the "Colorado Company." After its purchase of the property, the Colorado Company completed the road from Clayton, west to Creve Coeur Lake, in July, 1886, a distance of 16 miles, and by 1887 had extended it to Union, Franklin county, a further distance of 40 miles. The cost to the Colorado Company of constructing the road—excluding the cost of the right of way— from Clayton to Union was $2,300,000, all of which was expended between June, 1884, and July, 1887. The Park Company and all parties having any interest in the mortgage in suit knew that the Colorado Company was constructing and extending the road as stated, but set up no claim under the mortgage until after the road had been completed, and not then until the amendment to the charter had been filed in the office of the secretary of state and the fees required by law on the increased capital stock paid. Two hundred bonds only were certified and issued under the mortgage in suit, and they were delivered on the order of Walker, as president of the Park Company, to John F. Hume and Nathan Frank. Hume became a director of the Park Company March 31, 1882, and has continued to be such, and was the president of the company from March 31, 1882, until January 7, 1883, when he was succeeded in that office by Walker. Nathan Frank was "the financial agent of the Forest Park & Central Railroad Company, and of the Missouri & Kansas Railroad Construction Company." There seems to have been no market for the bonds mentioned in the mortgage in suit except at merely nominal figures; and the Park Company, being unable to raise the funds to pay the contractor or subcontractors for the work done, which amounted to less than $40,000, abandoned the enterprise. The 200 bonds which were issued were required, by the resolution of the stockholders which provided for the increase of the capital stock of the company, to "be placed in the hands of W. Speed Stevens, of Booneville, Mo., and L. M. Losson, of New York City, to hold and control for the interest of the parties interested in said road, with power to name the trustees for such bonds, and shall not otherwise be issued."

This requirement of the resolution was not observed. Without tracing in detail the facts connected with the issue and disposition of these 200 bonds, the evidence in the record satisfies us that all of the parties who handled these bonds, including the owner of the 79 bonds, at whose request this foreclosure suit was instituted, had full knowledge of all the foregoing facts at and before the time they acquired the bonds. The bonds were in the hands or subject to the order and control of the officers and directors of the Park Company, and were traded and trafficked in by them and others associated with them as doubtful and depreciated securities, the prices at which they were taken not being more than 10 or 20 per cent. of their par value. Twenty cents on the dollar was paid for the bonds held by Mr. Sherwood, at whose request, as the holder of 79 bonds, this suit was instituted. Before purchasing, in 1887, at this price, 43 of the 79 bonds which he holds, Mr. Sherwood made it a condition of the purchase that Mr. Hume should file in the office of the secretary of state of Missouri the amendment to the charter of the Park Company, increasing the capital stock of the company to one million of dollars, and should pay the tax required by the law of Missouri in such cases. Thereupon Mr. Hume hunted up Mr. Walker, the former president of the Park Company, and under date of July 26, 1887, procured his signature to a paper certifying to the amendment of the charter made at the stockholders meeting on the 31st of March, 1882, increasing the capital stock of the company; and on the 27th of July, 1887, Mr. Hume filed the certificate in the office of the secretary of state, and on the same day paid to the treasurer of state $475, the tax on the increase of the capital stock. It is conceded that the mechanics' liens were prior in time and equity to the mortgage in suit. The contention of the appellant is that the mortgage constitutes a valid lien on the property junior to the mechanics' liens, and that the mortgagee, not having been made a party to the suits to foreclose the mechanics' liens, has the right to redeem the property from the purchasers at the sale under the mechanics' lien judgments.

The court is not called upon to consider the validity of the mortgage so far as it concerns the Park Company, or the liability of that company for the money which it received for the bonds that were issued. The question is whether, upon the facts of the case, the appellant is equitably entitled to redeem the property from the purchaser at the sale under the mechanics' lien judgments. The general railroad law of the state of Missouri (section 765) declares that the entire amount of the bonded indebtedness of a "corporation shall never exceed the amount of its authorized capital." Under this statute the Park Company exhausted its power to mortgage its property and franchises under its charter when it executed the mortgage for $50,000, which was the full amount of its authorized capital stock. It was undoubtedly competent for the company to increase its capital stock. The mode of doing this is clearly pointed out by the constitution and statutes of the state. Section 727, c. 21, Rev. St. Mo., provides that a corporation may

increase its capital stock with the consent of the persons holding the larger amount in value of the stock, obtained at a meeting of the shareholders called for that purpose in the manner prescribed by the statute; and section 729 provides that, "upon the stock of any corporation being increased as hereinbefore provided, the date and amount of such increase of stock shall be certified by the proper corporate officers of such corporation to the secretary of state, who shall preserve and record said certificate in his office." Section 21 of article 10 of the constitution of Missouri declares, among other things, that no corporation "shall increase its capital stock without first paying into the treasury five dollars for every ten thousand dollars' increase"; and section 708 of the Revised Statutes of Missouri of 1879 provides that "no increase of the capital stock of any such corporation shall be valid or effectual until such corporation, company or association, shall have paid into the state treasury five dollars for every ten thousand dollars or less of such increase in the capital stock of said corporation or association." It will be observed that, to effect a valid increase of the capital stock of a corporation, the statute requires three things to be done: First, an affirmative vote of a majority in value of the stockholders; second, that the date and amount of such increase of stock shall be certified by the proper officers of the corporation to the secretary of state; and, third, the payment into the state treasury of $5 for every $10,000 of increase in the capital stock. The constitution and statute make a compliance with the last requirement a condition precedent to a valid increase of the capital stock; the constitution declaring that no corporation "shall increase its capital stock without first paying" the required sum into the state treasury, and the statute declaring that no increase of the capital stock "shall be valid or effectual until" such payment shall be made. When the mortgage in suit was executed, in September, 1883, the resolution to increase the capital stock of the company had not become "valid or effectual"; the required certificate of the increase of the capital stock had not been filed with the secretary of state; and the required tax had not been paid into the state treasury. The public records disclosed the fact that the Park Company had no authority to execute the mortgage in suit; and these public records spoke the truth, for no amendment to the charter increasing the capital stock had been filed, and no tax paid at that time. The appellees and their grantors had a right to rely upon the public records. The facts disclosed by them were presumptively true. But there is in this case more than the legal presumption that the public records spoke the truth. The evidence shows that the public records disclosed the exact truth with regard to the legal status of this corporation.

More than five years elapsed between the date of the passage of the stockholders' resolution to increase the capital stock of the company and the filing of the certificate of the same and the payment of the tax required to make such increase effectual. In the meantime the mechanics' liens had been foreclosed, and the mortgagor, the Park Company, divested of its title to the property.

Three years after the Park Company had been divested of its title to the property, and after the Colorado Company had in good faith expended over $2,300,000 in the extension, construction, and improvement of the road, an effort is made to give a retroactive effect to the mortgage in suit against the Colorado Company, by then filing the required certificate and paying the tax which was indispensable to give validity and effect to the mortgage against the Colorado Company. This suit is instituted by the appellant, upon the request of the holder of 79 of the bonds mentioned in the mortgage, who had full knowledge of all of the facts, and who paid scarcely more than a nominal price for the bonds. It was obvious to the public, as well as to those parties having an interest in the Park Company as creditors or otherwise, that the bonds mentioned in the mortgage in suit had not been negotiated, and the proceeds applied to the payment of the debts of the company and the construction of its road; for the aggregate amount of the mechanics' liens was less than $40,000, and it is incredible that these liens would not have been discharged had the company perfected the mortgage in suit, and placed upon the market the bonds therein mentioned. If that had been done, the mechanics' liens could have been easily satisfied. The reason it was not done is apparent. Everything goes to show that the company abandoned the scheme to increase its capital stock and extend its road. While the Park Company was not legally dissolved, it ceased to be a going concern; its stockholders held no meetings; its directors did not meet, and its officers left the state; and for five years and more the company gave no sign of life, and this has been its condition continuously to this date. Up to the bringing of this suit, the appellant asserted no right under the mortgage, and no bondholder made any claim, though it is clear that whoever held the bonds must have had full knowledge of all the facts. It was only after the purchaser of the property at the sale under the mechanics' liens had extended and completed the road at a cost of nearly two and one-half millions of dollars that any attempt was made to give force and effect to the mortgage in suit against the Colorado Company; and this was done at the request of the holder of only 79 bonds, who had full knowledge of all the facts, and who paid a comparatively small sum for his holdings. Upon these facts, it is clear that this bondholder has no equity to disturb the title of the Colorado Company, whatever may be his legal or equitable rights against the Park Company itself, as to which we express no opinion. The claim now set up by the appellant against the Colorado Company is plainly an afterthought, and purely speculative. A court of chancery will not disturb the title to millions of dollars' worth of property, acquired in good faith, at the suit of one who sets up a doubtful equity, acquired with full notice, for a few dollars, for speculative purposes. Upon the facts of the case, the appellant is estopped from claiming the rights of a junior mortgagee against the Colorado Company. The decree of the circuit court is affirmed.